```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,         :
                                  :
                                  :         19 CR 169 (VM)
         -against-                :       DECISION AND ORDER
                                  :
ALBERTO PELLOT,                   :
                                  :
                  Defendant.      :
----------------------------------X
```

**VICTOR MARRERO, U.S.D.J.:**

On March 5, 2020, defendant Alberto Pellot ("Pellot") was convicted of one count of conspiracy to distribute heroin in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). Pellot was sentenced to a term of sixty months, the mandatory minimum prescribed by statute. (See Dkt. No. 149.) After multiple adjournments of Pellot's surrender date, he began serving his sentence at F.C.I. Fort Dix, where he is currently incarcerated, on October 12, 2020.

Now pending before the Court is Pellot's February 26, 2021 motion for compassionate release in the form of either home confinement or a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1). ("Motion," Dkt. No. 225.) For the reasons set forth below, the Court GRANTS the request for a sentence reduction.

As an initial matter, the Court finds that Pellot has satisfied Section 3582's exhaustion requirement. "[A] defendant may go to court 'after the defendant has fully

1

exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." United States v. Brooker, 976 F.3d 228, 233 (2d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). Pellot avers that he submitted a request for compassionate release to his case manager at F.C.I. Fort Dix on November 12, 2020. (Motion, Ex. B.) While the Government informed defense counsel that F.C.I. Fort Dix has no record of this request (Motion at 3), this discrepancy is of no consequence because Pellot made at least one additional submission that put the Bureau of Prisons ("BOP") on notice of his request. Specifically, on January 19, 2021, Pellot submitted an "Inmate Request to Staff" form to check the status of his compassionate-release request, and a BOP staff member responded that if a response had not been received within thirty days, Pellot should "file directly with the court of jurisdiction." (Motion, Ex. C.) And appointed counsel represents that another request was submitted to the warden by email on January 28, 2021. Under these circumstances, the Court is persuaded that the "staff at the BOP had sufficient notice of Defendant's request that it can be deemed to have been under consideration for at least

2

thirty days." United States v. Hayden, 458 F. Supp. 3d 1004, 1009 (N.D. Ind. 2020).

To grant a sentence reduction under 18 U.S.C. § 3582(c)(1), the Court must find that "extraordinary and compelling reasons warrant such a reduction." Under this provision, courts are authorized "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020). "[T]he statute allows for any sentence reduction -- up to and including but not limited to time served -- so long as that reduction is warranted by extraordinary and compelling reasons, consistent with the applicable policy statement, and appropriate in light of the Section 3553(a) factors." United States v. Rodriguez, No. 00 CR 761, 2020 WL 5810161, at *2 (S.D.N.Y. Sept. 30, 2020). The only statutory limitation is that rehabilitation alone shall not be considered an extraordinary and compelling reason; otherwise, "a district court's discretion in this area -- as in all sentencing matters -- is broad." Brooker, 976 F.3d at 237-38.

Pellot argues that his motion for compassionate release should be granted because he is fifty-four years old; has medical conditions including obesity, degenerative joint

3

disease, and a heart condition called right bundle branch block ("RBBB"); and has been taking steps to rehabilitate himself, such as drug treatment and vocational training, both before and after his arrest. (See Motion at 4-8.) The Court is persuaded that these circumstances, taken together, are sufficiently extraordinary and compelling to warrant a sentence reduction.

As Pellot notes, he suffers from many health conditions that place him at a higher risk of suffering from severe illness from COVID-19. As confirmed by the presentence investigation report ("PSR"), Pellot suffers from conditions such as high blood pressure, high cholesterol, asthma, and RBBB, among numerous other physical and mental health issues. (See PSR ¶ 95.) And based on Pellot's height and weight as documented in the PSR (id. ¶ 94), Pellot is obese with a body mass index ("BMI") of 40.2. See Adult BMI Calculator, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Mar. 1, 2021). These conditions, and specifically Pellot's obesity and heart condition, increase the risk that Pellot will suffer from severe illness from COVID-19. See, e.g., S. Andrew McCullough et al., Electrocardiographic Findings in Coronavirus Disease-19: Insights on Mortality and Underlying

Myocardial Processes, 26 J. Cardiac Failure 626, 629 (2020) (discussing findings that conditions such as RBBB "increased the odds of death"); People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 22, 2021) (noting that adults of any age with heart conditions and severe obesity (that is, with a BMI of over forty) are at increased risk of severe illness, and adults with asthma or high blood pressure may be at increased risk).

Pellot's age also contributes to the extraordinary and compelling circumstances, particularly in connection with the health conditions discussed above. Recent studies suggest that "age is by far the strongest predictor of an infected person's risk of dying" of COVID-19 and that this "risk increases from the age of 50." Smriti Mallapaty, The Coronavirus Is Most Deadly If You Are Older And Male — New Data Reveal the Risks, Nature (Aug. 28, 2020), https://www.nature.com/articles/d41586-020-02483-2; see also Older Adults, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Feb. 26, 2021) (noting that "[r]isk for severe illness with COVID-19

5

increases with age, with older adults at highest risk"). Although at fifty-four years of age Pellot is not within the highest-risk age group, older adults as well as "people of any age who have serious underlying medical conditions . . . are at higher risk for developing more serious complications from COVID-19 illness." COVID-19 Guidance for Older Adults, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/aging/covid19-guidance.html (last reviewed Jan. 8, 2021).

The Court also considers Pellot's rehabilitative efforts, in conjunction with his age and health, to contribute to the extraordinary and compelling circumstances supporting a sentence reduction. Pellot has struggled with substance abuse since his childhood, which was marred by domestic violence and abuse. (PSR ¶¶ 85-87, 108.) Pellot had gone decades without any criminal incident before the conduct underlying his most recent conviction, and Pellot represented that this offense stemmed from a relapse following the untimely death of his son in 2018. (PSR ¶ 90.) Drug treatment records from 2018 and 2019 demonstrate that Pellot had been obtaining treatment at Samaritan Daytop Village before and after his arrest (Motion, Ex. D), and facilitators from this treatment facility indicated that Pellot had exceptional attendance and was fully engaged (PSR ¶ 112). Pellot also

participated in vocational and educational training after his arrest and since entering F.C.I. Fort Dix. (Motion, Exs. E-F.) Pellot's rehabilitation, in conjunction with the circumstances presented by his age, health, and the pandemic, contributes to the extraordinary and compelling reasons warranting a sentence reduction. See Brooker, 976 F.3d at 238 (noting that a defendant's rehabilitation "may also interact with the present coronavirus pandemic" to present a justification for granting a sentence reduction).

While Pellot has recently recovered from COVID-19, Pellot's infection and subsequent recovery does not undermine the Court's finding of extraordinary and compelling circumstances. The Court recognizes that as of October 2020, the Centers for Disease Control and Prevention has said that cases of reinfection are "rare." Reinfection, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last updated Oct. 27, 2020). But other sources suggest that reinfections are "on the rise." Jop de Vrieze, More People Are Getting COVID-19 Twice, Suggesting Immunity Wanes Quickly in Some, Science (Nov. 18, 2020), https://www.sciencemag.org/news/2020/11/more-people-are-getting-covid-19-twice-suggesting-immunity-wanes-quickly-some. Moreover, there have recently been demonstrated

7

instances of reinfections within prison facilities. See Angie Jackson, State Reviewing Possible COVID-19 Reinfections After 115 Prisoners Test Positive Twice, Detroit Free Press (Dec. 12, 2020), https://www.freep.com/story/news/local/michigan/2020/12/12/covid-coronavirus-reinfection-michigan-prisoners/3876185001/; see also Noah Goldberg, Prisoners at Risk of Catching COVID-19 a Second Time Behind Bars Asking to Be Released, N.Y. Daily News (Jan. 10, 2021), https://www.nydailynews.com/new-york/ny-covid-second-cases-among-prisoners-20210111-tedyjcpwznajzh3xa4hbgjiiqi-story.html. This information, along with other risk-increasing factors like Pellot's age and health conditions, persuades the Court that "it is conceivable that [Pellot] could be re-infected and experience a severe case of COVID-19." United States v. Secchiaroli, No. 17 CR 179, 2021 WL 614632 (W.D.N.Y. Feb. 17, 2021).

"Having found extraordinary and compelling reasons for a sentence reduction, the Court must now determine whether, and if so how much of, a sentence reduction is warranted by those reasons and is appropriate based on the Section 3553(a) factors and applicable policy statement." Rodriguez, 2020 WL 5810161, at *5. Pellot seeks a transfer to home confinement,

8

or in the alternative, some other reduction to his sixty-month sentence.

After considering the Section 3553(a) factors, the Court concludes that a transfer to home confinement would not sufficiently "reflect the seriousness of," or "provide just punishment for," Pellot's conduct, see 18 U.S.C. § 3553(a)(2)(A), as Pellot has served only a few months of his term of imprisonment thus far. Nevertheless, the Court is persuaded that a more modest reduction to a term of thirty-six months' imprisonment, followed by four years' supervised release, is warranted by the extraordinary and compelling circumstances and appropriate in light of the Section 3553(a) factors.

The Court comes to this conclusion after considering "the nature and circumstances of the offense," which was a nonviolent drug offense, and "the history and characteristics of the defendant," namely, Pellot's history with substance abuse, the decades-long absence of any criminal conduct on his record, the traumatic event triggering his relapse, and Pellot's pre- and post-arrest rehabilitative efforts. See 18 U.S.C. § 3553(a)(1). The Court has also taken into account the other goals of sentencing and finds that a sentence reduction to thirty-six months' imprisonment is sufficient to comply with the purposes set forth in 18 U.S.C. §

3553(a)(2)(A), particularly as "the pandemic has rendered [Pellot's] sentence far harsher and more punitive than the Court had anticipated at sentencing." See Rodriguez, 2020 WL 5810161, at *8. And given Pellot's age and health conditions, as well as his criminal history category I (PSR ¶ 127), the Court is persuaded that Pellot poses a low risk of recidivism. See generally U.S. Sentencing Comm'n, Recidivism & Federal Sentencing Policy, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/backgrounders/RG-recidivism-overview.pdf. Finally, this sentence will enable Pellot to continue his vocational and educational training while at F.C.I. Fort Dix and allow him the opportunity to continue his drug treatment at his prior facility once released. See 18 U.S.C. § 3553(a)(2)(D).

Thus, the Court concludes that extraordinary and compelling circumstances justify a sentence reduction in Pellot's case from sixty months' imprisonment to thirty-six months' imprisonment. Such a reduction is consistent with the Section 3553(a) factors and applicable policy statements.

### ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED**, that the motion by defendant Alberto Pellot ("Pellot") for a sentence reduction under 18 U.S.C. §

3582(c)(1) is hereby GRANTED in part, and his sentence is reduced to thirty-six months' imprisonment, followed by four years' supervised release.

The Clerk of Court is hereby directed to mail this Order to Alberto Pellot, Register Number 86470-054, at F.C.I. Fort Dix, P.O. Box 2000, Joint Base MDL, NJ 08640.

**SO ORDERED.**

Dated:   New York, New York
         3 March 2021

_____
Victor Marrero
U.S.D.J.